**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.**

**In re Motion of Andrew J. Carboy, Attorney Representing Claimant Sally Johnson.**

**Bankruptcy No. 85–01307–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

June 10, 1999.

---

Andrew J. Carboy, The Jacob D. Fuchsberg Law Firm, New York City, for Movant.

Orran L. Brown, Richmond, Virginia, for the Trust.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the Motion for an Order Relieving Legal Counsel From the Ten Percent Limit on Attorney's Fees for the Pro Rata Distribution (the "Motion") of Andrew J. Carboy (the "Movant"), counsel for Dalkon Shield Claimant Sally Johnson (the "Claimant"). The Dalkon Shield Claimants Trust (the "Trust") filed a Statement of Position and takes no position on the Motion, leaving the matter to the discretion of the Court. The Claimant filed an affidavit in support of the Motion. None of the interested parties have requested a hearing on this matter, and it is ripe for disposition. Based on the pleadings and the relevant case law, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### I. Procedural History of Claimant's Claim

During the Option 3 claims process, the Trust evaluated the Claimant's claim and

offered her a sum of money. The Claimant rejected the Option 3 offer and elected to adjudicate her claim through jury trial pursuant to § E.5(b) of the Claims Resolution Facility (the "CRF"). The Claimant's case proceeded to a jury trial in the United States District Court for the Southern District of New York. After a week of trial and two days of deliberations during which the jury could not reach a unanimous verdict, the Court declared a mistrial on October 23, 1998, and scheduled a retrial for March 8, 1999. On October 26, 1998, the Trust extended an offer of $121,824.00 to the Claimant to settle her claim.

## II. Pro Rata v. Dividend Payment Plan

Claimants who settle their claims or recover arbitration or trial awards above $725.00 are eligible to receive pro rata payments from the Trust out of residual funds pursuant to § G.14 of the CRF. To date, the Trust has paid eligible claimants pro rata totaling ninety-seven percent (97%) of their original settlements or awards.

For any claims which settle now, like the Claimant's, the Trust options allow the claimant a choice: 1) accept the original offer and receive an additional dividend of 97% to close the claim (the "Dividend Plan"), or 2) accept the original offer, be paid 97% pro rata, and maintain a file at the Trust to be in line to receive any future potential pro rata distributions (the "Pro Rata Plan"). The Court's Order of March 1, 1995 (the "March 1 Order") prohibits lawyers for claimants from receiving more than ten percent (10%) as attorneys fees out of any pro rata payments (the "10% Pro Rata Cap"). The 10% Pro Rata Cap applies even if the claimant wishes for her attorney to have more than 10%. Thus, if a claimant chooses the Pro Rata Plan, the 10% Pro Rata Cap applies to the pro rata payments; only the Court can grant a claimant's attorney relief from the 10% Pro Rata Cap. In order to replicate this fee limitation in the Dividend Plan, the Trust requires the attorney for a claimant who chooses the Dividend Plan to sign an agreement limiting to 10% his or her fees out of the 97% dividend (the "10% Dividend Cap").

## III. Claimant's Choice

The Claimant decided to settle her claim through the Pro Rata Plan. As provided above, in order for the Movant to receive more than 10% out of the Claimant's pro rata payments, he must seek relief from the Court. The Movant filed his Motion for Relief From the 10% Pro Rata Cap on March 12, 1999, the Trust filed its Statement of Position on April 15, 1999, and the Claimant filed her affidavit in support of the Motion on April 27, 1999.

## IV. Oral Argument Not Requested

None of the interested parties requested oral argument on the Motion, and pursuant to Local Bankruptcy Rule 9013–1(L) and Federal Rule of Civil Procedure 78, the Court will decide the Motion on the parties' pleadings.

## CONCLUSIONS OF LAW

## I. Standard For Relief From The 10% Pro Rata Cap

■ On March 1, 1995, the Court entered the March 1 Order (Order Disallowing Unreasonable Attorneys Fees On Pro Rata Distribution). Paragraph # 2 of the March 1 Order prohibits counsel for Dalkon Shield claimants from "charging or receiving, directly or indirectly, any compensation or fees, based upon or out of any pro rata distribution received by a Dalkon Shield Personal Injury Claimant from the Trust ... in excess of ten percent of such pro rata distribution." The Fourth Circuit Court of Appeals unanimously affirmed the Court's March 1 Order in *In re A.H. Robins Co., Inc. (Bergstrom v. Dalkon Shield Claimants Trust)*, 86 F.3d 364 (4th Cir. 1996). In order for an attorney or firm to be entitled to a fee of more than ten percent, the firm or attorney must present to the Court "extenuating circumstances"

which justify relief from the March 1 Order. *See In re A.H. Robins Co., Inc. (Order Limiting Attorneys Fees)*, 182 B.R. 128, 138 (E.D.Va.1995).

█ The Fourth Circuit ruled that the pro rata payment is a bonus which is paid over and above the amount of an individual's full settlement of a claim. *See Bergstrom*, 86 F.3d at 369–70. In addition, the Court has determined that the availability of pro rata payments did not result from the legal efforts of claimants' counsel, but from the effective management of the Trust. *See Order Limiting Attorneys Fees*, 182 B.R. at 136. In reviewing the reasonableness of fees, there is a critical distinction between a claimant's underlying recovery on a claim and the subsequent receipt of a pro rata payment. *Id.* at 135. Accordingly, when considering a fee application such as the current Motion before the Court, the proper focus of the inquiry is not on the attorney's efforts on the underlying claim, but on the efforts required for the client to have the opportunity to receive the pro rata payment. *Id.*

In addressing the current Motion, therefore, the Court will not consider the efforts which the Movant undertook in handling the Claimant's case. Instead, the Court will determine if the Movant has engaged in any efforts which resulted in the Claimant having the opportunity to receive pro rata payments and which present the Court with extenuating circumstances to provide the Movant with relief from the 10% Pro Rata Cap.

## II. Movant Has Not Satisfied Standard For Relief

█ In his Motion, the Movant states that he performed the following services in representing the Claimant in her Dalkon Shield claim: drafted pleadings and interrogatory responses, briefed six motions, defended depositions, read and summarized thousands of pages of multi-district litigation materials for use at trial, prepared extensive pre-trial memorandum, and tried the Claimant's case for two weeks. The Movant asserts that he and his law firm expended $30,500.00 in preparing and trying the Claimant's case. The Movant states that the final settlement offer from the Trust, which is twenty-five times higher than the Trust's original offer, is the result of his work and the work of his firm. The Movant argues that a one-third fee out of the total settlement is reasonable here, and that this situation bears no resemblance to the fees obtained by the attorneys in the *Bergstrom* case. The Movant concludes that his and his firm's work in this case present the Court with extenuating circumstances which justify relief from the 10% Pro Rata Cap. As stated above, the Claimant fully supports the Movant's Motion.

The Court finds the Movant's arguments to be unavailing. It is clear from the Movant's assertions that the Movant and his law firm have expended a considerable amount of time and energy in representing the Claimant. Unfortunately for the Movant, the standard for relief from the 10% Pro Rata Cap does not state that doing hard work for a claimant entitles the claimant's attorney to such relief. The Court has held accordingly so on numerous occasions. *See In re A.H. Robins Co., Inc. (In re Krause & Rollins, Chartered)*, 223 B.R. 86 (E.D.Va.1998) (fact that attorney had, as compared to other Dalkon Shield attorneys, expended more resources in obtaining the maximum settlement for his clients did not entitle him to charge a higher fee for the ministerial task of forwarding to his clients their pro rata distribution); *see also In re A.H. Robins Co., Inc. (In re O'Connell & Aronowitz, P.C.)*, 222 B.R. 781 (E.D.Va.1998) (fact that attorney prepared fifteen pre-petition cases for trial and represented thirty-five additional claimants post-petition did not entitle him to relief from the 10% Pro Rata Cap); *In re A.H. Robins Co., Inc. (In re Cochrane & Bresnahan, P.A.)*, 222 B.R. 779 (E.D.Va.1998) (fact that attorney was involved in pre-petition lawsuits, in the consolidation of thousands of civil actions

into a single class action, and in obtaining sufficient funds to pay outstanding claims did not entitle the attorney to relief); *In re A.H. Robins Co., Inc. (In re Zieve)*, 222 B.R. 775 (E.D.Va.1998) (fact that attorney's involvement in Dalkon Shield case precluded him from accepting more lucrative cases and forced him into substantial debt did not entitle him to relief).

The Movant has not provided the Court with any evidence that his efforts resulted in the Claimant having the opportunity to receive pro rata payments. There is no doubt that the Movant and his firm expended considerable efforts in representing the Claimant, but there is no proof that these efforts resulted in the Claimant's ability to receive pro rata distributions. In the one instance where the Court granted relief from the 10% Pro Rata Cap, *In re A.H. Robins Co., Inc. (In re Meshbesher & Spence, Ltd.)*, 223 B.R. 489 (E.D.Va.1998), the Court held that the attorneys' involvement in the removal of certain Trustees of the Trust warranted relief because the removed Trustees were performing their duties in a manner which threatened the fiscal success of the Trust assets. The Court concluded that these legal efforts had a direct impact on whether the Trust was effectively managed and the funds properly preserved for future pro rata payments. *Id.* at 491. Thus, the Court found that extenuating circumstances existed and provided grounds for relief from the 10% Pro Rata Cap. *Id.* The Movant has provided the Court with no such evidence here. In addition, the Claimant's support of the Motion carries no weight because client consent is not a factor in the standard for relief from the 10% Pro Rata Cap.

## CONCLUSION

While the Court recognizes and appreciates the Movant's contributions to the success of the Claimant's claim, the Court finds that the Movant has failed to present the type of extenuating circumstances which would justify relief from the March

1 Order and the 10% Pro Rata Cap. In the absence of such a showing, the 10% Pro Rata Cap is "not only reasonable, but overly generous." *Bergstrom*, 86 F.3d at 377. The Court, therefore, will deny the Movant's Motion. An appropriate Order will be entered simultaneously herewith in conformity with this Memorandum Opinion.